CARL PEASE *et al.*, Plaintiffs-Appellants, v. ACE HARDWARE HOME CENTER OF ROUND LAKE NO. 252c, Defendant-Appellee and Third-Party Plaintiff and Cross-Appellant (Lozier Store Fixtures, Third-Party Defendant and Cross-Appellee).

Second District No. 84—0911

Opinion filed September 24, 1986.

Thomas P. Stepanich, Ltd., of Waukegan, for appellants.

Ellis E. Fuqua and William P. Anderson, both of Fuqua, Winter, Wysocki & Stiles, of Waukegan, for appellee Ace Hardware Home Center of Round Lake No. 252c.

Steven L. Larson and Linda E. Spring, both of Wildman, Harrold, Allen & Dixon, of Waukegan, for Lozier Store Fixtures.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs Carl Pease (Dick) and Mark Tomasetti (Mark) appeal from the judgment of the circuit court of Lake County entered on jury verdicts in their favor on their negligence action against defendant Ace Hardware Home Center of Round Lake No. 252c (Ace). In their complaint, Dick and Mark asserted that Ace failed to exercise ordinary care in stacking paneling on a display rack and that as a result of Ace's careless acts, plaintiffs sustained serious injuries. On appeal, Dick and Mark challenge the jury's finding that they were both 50% comparatively negligent. Mark and Dick also assert that the trial court erred in tendering a jury instruction on the law of agency and in allowing the testimony of Ace's expert witness. Plaintiff Susan Pease (Susan) asserts on appeal that the jury returned inconsistent verdicts when it found Ace liable to Dick, but also found Ace not liable to Susan on her consortium action. Ace as third-party plaintiff cross-appeals from the judgment entered on the jury verdict in favor of third-party defendant, cross-appellee Lozier Store Fixtures (Lozier), the manufacturer of the paneling display rack. Ace asserts the trial court erred in excluding the testimony of its expert witness. We affirm the jury's finding that Mark and Dick were each 50% comparatively negligent, we reverse the jury verdict against Susan on her consortium claim, direct entry of judgment in her favor, and remand that action for a new trial to assess her damages, and we reverse the jury's verdict in favor of Lozier and remand that action for a new trial.

The incident which precipitated the instant case occurred on July 19, 1982. On that date, Dick and Mark entered the Ace store to purchase wood paneling. After several minutes, Dick and Mark located paneling in the home improvement department which satisfied their needs.

Positioned on a display rack manufactured by Lozier, the paneling stood in a nearly vertical position to the floor. The rack contained approximately 84 pieces of paneling. After Mark opened the two restraining bars securing the paneling, Dick removed the first piece of paneling and then backed away from the display rack. As Mark stepped forward to remove a second piece of paneling, the entire stack fell forward onto both Mark and Dick.

After store employees extricated Dick and Mark from underneath the paneling, both were taken to Condell Memorial Hospital. Fol-

lowing this incident, Dick was hospitalized for 19 days and returned to the hospital on several subsequent occasions for treatment of problems related to his back. His treating physician, Dr. John Bellucci, diagnosed Dick's condition as lumbar disc syndrome. Another physician, testifying for Ace, stated he found no evidence that Dick suffered from any physical abnormality involving the lower part of his back. A licensed psychologist, Dr. James Devine, testified that as a result of the accident Dick developed extreme psychological problems and diagnosed the condition as post-traumatic stress disorder.

The injuries sustained by Mark required less hospitalization. He remained in the hospital for several hours on the day of the incident and returned at a later date for a series of X rays. Mark complained that as a result of the accident, he commonly experiences neck stiffness.

On January 17, 1984, Dick and Susan filed their first amended complaint at law against Ace. In count I, Dick sought damages as a result of Ace's negligence in stacking the paneling in an unsafe manner and in its use of an unsafe display rack. In count II, Susan sought damages for consortium, for Dick's medical expenses and for his lost wages. On February 28, 1984, Ace filed a third-party complaint against Lozier based upon a strict-liability theory, alleging that Lozier sold Ace the display rack which was unreasonably dangerous and defective when it left the control of Lozier.

Both the original and third-party actions were tried before a jury. In the original action, the jury found Ace liable to Dick and awarded Dick $40,000 in damages, but found Dick 50% comparatively negligent. The jury also found Ace negligent as to Mark, assessed his damages at $2,300 and found him 50% comparatively negligent. After the reductions for their comparative negligence, Dick was awarded $20,000 and Mark was awarded $1,150. With respect to Susan's consortium action, the jury found in favor of Ace. As to Ace's third-party complaint, the jury determined that Ace was not entitled to contribution from Lozier.

On September 6, 1984, plaintiffs filed a post-trial motion, and Ace also filed a post-trial motion asserting various trial errors. After the trial court denied both motions, plaintiffs and Ace filed timely notices of appeal.

Plaintiffs' first two arguments request this court to review the evidence. The differences in the two arguments are the standard of review and the relief requested. Plaintiffs first assert that the trial court erred in denying their motion for a directed verdict at the close of all the evidence and thus assert entitlement to judgment as a mat-

ter of law.

To the extent plaintiffs are arguing that they were entitled to a directed verdict on the question of Ace's negligence, we agree with Ace that we need not address the argument because the jury returned a verdict in their favor. In their reply brief, however, plaintiffs argue that the trial court should have directed a verdict in their favor as to the question of their comparative negligence. Plaintiffs also request a new trial because the jury's verdict of comparative negligence is against the manifest weight of the evidence. Since a conclusion by this court that the jury's verdict of comparative negligence is not against the manifest weight of the evidence would also require the conclusion that the trial court did not err in denying plaintiff's motion for a directed verdict, we review the evidence of comparative negligence in light of the manifest-weight standard.

■ Prior to reviewing the evidence, we must first dispose of plaintiffs' contention that the trial court erred in giving an instruction on agency. The only ground for objecting to the instruction raised by plaintiffs during the instruction conference and on appeal is that the record contained no evidence of agency. Inconsistently, however, plaintiffs tendered and the trial court accepted an agency instruction, predicated on Illinois Pattern Jury Instruction, Civil, No. 50.10 (2d ed. 1971) (IPI Civil 2d), which defined the terms agent and independent contractor. The language in plaintiffs' agency instruction contains virtually all of the language in defendant's agency instruction (based upon IPI Civil 2d No. 50.05). While the instructions arguably are redundant, plaintiffs never in the trial court or this court objected to defendant's agency instruction on the basis that it was redundant. Moreover, we can see no prejudice to plaintiffs because both agency instructions were given. As plaintiffs tendered their own agency instruction which was accepted by the trial judge, we find unpersuasive plaintiffs' argument that the record contained no evidence of any agency warranting the trial court's acceptance of defendant's agency instruction. See *Erwin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140 (a party may not assert error on the basis of an instruction which he has caused to be given to the jury); *Country Life Insurance Co. v. Goffinet* (1969), 117 Ill. App. 2d 338, 254 N.E.2d 281 (party precluded from objecting to instruction which contained same language as that given to jury on *voir dire* by agreement of the parties).

Turning to our review of the evidence, we need only consider the evidence regarding plaintiffs' comparative negligence because defendant does not challenge the jury's verdict as to its liability. The testimony reveals the following. Mark and Dick arrived at the Ace store

on July 19, 1982, at approximately 4:30 p.m. Three Ace employees, working in the home improvement section of the store, were present at the time the accident occurred: Robert Lindley, the manager of the home improvement department, Joseph Mueller, assistant manager, and Matthew Gorsuch, a stock boy. Upon entering the store, Mark and Dick explained to Mueller that they were looking for discontinued or damaged paneling. Mueller directed them to those products and then returned to his desk where Lindley was situated, approximately 45 feet from the location of the accident. Mark and Dick found these materials unsatisfactory, and so continued walking down the aisle in the direction away from where Mueller and Lindley were situated. Eventually, Dick and Mark located the paneling involved in their lawsuit. Photographs of the rack involved in the accident were introduced as Stipulated Exhibit A (1 through 11) which revealed that the rack was positioned at the end of the aisle.

Lindley testified the rack contained 84 sheets of paneling prior to the accident. Each sheet was 4 feet wide, 8 feet long and 5/32 inches thick. Mueller testified that each panel weighed 10 to 15 pounds. Two metal arms running across the front of the rack kept the paneling in place. Lindley stated the lower bar was 4½ feet above the base of the rack and the higher bar was approximately 7 feet above the base. The bars were not locked and required an upward movement and then a forward movement to gain access to the paneling. Lindley said the paneling was bowed toward the front of the frame and thus the top of the paneling rested against the 7-foot bar. Mueller stated the bottom of the paneling intentionally was positioned against the wooden runner at the base prior to the accident to prevent the paneling from slipping. Despite the higher bar, Gorsuch and Mueller stated the paneling continued to lean out toward the aisle prior to the accident.

Mark and Dick were the only eyewitnesses to the accident. Mark testified he opened both bars away from the paneling, swinging them open like a door. Dick then took one piece of paneling off and held the piece in front of him with one hand on each side. Mark then began to remove a second piece of paneling and then sensed the rest of the paneling falling forward. Mark admitted he saw the thickness of the panels prior to opening the bars because the edge of the rack was exposed. He also admitted the low price of the paneling, which he noticed prior to the accident, indicated to him that the paneling was very thin. Mark stated the higher bar was positioned over his head. Dick testified that when Mark opened both bars of the rack, he noticed that the paneling was "warped."

■ We believe the jury's verdict of comparative negligence as to

Mark and Dick is not against the manifest weight of the evidence. Defendant's employees testified the paneling was warped and leaned outward against the top bar. The rack provided an open view of the paneling both from the front and the side. Given the condition of the paneling against the rack, the jury could have concluded plaintiffs were negligent in opening the bar and removing the paneling. Moreover, the jury's province is to determine the comparative negligence of the parties. (*Blacconeri v. Aguayo* (1985), 132 Ill. App. 3d 984, 478 N.E.2d 546.) Its verdict finding both Dick and Mark 50% negligent relative to defendant is not against the manifest weight of the evidence.

■ Plaintiffs next assert the trial court erred in allowing the testimony of defendant's expert witness Douglas Morita, a mechanical engineer. Morita visited the store where the accident occurred and measured the specific rack involved in this accident. Morita testified the rack had only four levels from which the restraining arm could be secured. Based upon his measurement of the rack, Morita stated the highest level was 88.6 inches. Plaintiffs apparently complain that Morita's testimony was allowed improperly because he did not know for certain that the restraining arm was on the highest level on the day of the accident. Although plaintiffs argue Morita's testimony amounts to reconstruction experiment testimony, this characterization is inaccurate. Morita did not give his opinion on how the accident happened, but rather gave testimony on the measurement of the rack. Therefore, the reconstruction case cited by plaintiffs, *Sansonetti v. Archer Laundry, Inc.* (1976), 44 Ill. App. 3d 789, 358 N.E.2d 1142, is inapposite.

Moreover, this testimony on the height of the highest level was instructive to the jury in its understanding of the design of the rack. Although plaintiffs complain vehemently about the paucity of evidence regarding the position of the arm on the day of the accident, the record contains ample testimony that the higher arm was positioned at the highest possible of the four settings of the rack. Mark testified the higher arm was above his head, and Lindley testified the higher bar was 7 feet high. Plaintiffs never presented any testimony that the higher bar was, in fact, at a lower height than the 7 foot estimate made by Lindley. We therefore conclude Morita properly gave testimony on the measurement of the rack and that the evidence supported the conclusion that the top restraining bar was positioned at the highest level on the rack.

Plaintiffs next contend that a new trial is required essentially because the jury rendered inconsistent verdicts. The jury returned a

verdict finding Ace negligent as to Dick, but also returned a verdict in favor of Ace regarding Susan's action for loss of consortium. As Susan's consortium action derives from her husband's action, Susan argues, the jury's verdict of no liability on the consortium action must be set aside.

Prior to discussing the rules regarding a consortium action in Illinois, we examine the allegations relating to the consortium action in plaintiff's complaint and also the instructions tendered to the jury on the consortium action. Susan brought her cause of action based upon loss of consortium in count II of Dick's and Susan's first amended complaint at law filed on January 17, 1984. In count II, Susan realleged the facts contained in count I and then alleged: (1) that she was Dick's wife on the date of the accident; (2) that as a direct and proximate result of the injury to her husband, she suffered damage to her conjugal relationship with Dick; and (3) that she suffered injury based upon Dick's medical expenses, lost work time and inability to support properly Susan and their children.

Following the trial, the court tendered an instruction which generally described the contentions of the parties but did not refer to Susan's consortium action. The court specifically instructed the jury if it first found Ace liable to Susan on her consortium claim, it could award as elements of her damages the reasonable value of her husband's services, companionship and conjugal relationship of which she had been deprived. Also submitted to the jury was an instruction that if the jury concluded Ace was not liable to Dick, Susan, and Mark, it would have no occasion to consider the question of damages. The jury unanimously returned a verdict in favor of Ace and against Susan on her consortium claim.

Our review of the jury instructions reveals that the jury did not receive an instruction on the elements of proof necessary to establish a consortium cause of action. The court's instructions seem to combine the action of Dick and Susan together in terms of liability and only provide specific direction on her consortium claim concerning her damages. While the court's instructions expressly allow the jury to return a verdict against Susan on her consortium claim, the instructions do not explain to the jury the interrelationship between Dick's and Susan's actions and the derivative nature of Susan's consortium claim. While a fair argument can be made that the jury was not instructed properly without an instruction articulating the necessary elements of Susan's consortium action, neither party in the trial court or this court discussed the jury instructions relative to the consortium action. Nonetheless, explication of the relevant jury instructions above

facilitates our interpretation of the jury verdict in the case at bar.

■■ In analyzing the correctness of the jury verdict in favor of Ace and against Susan on her consortium action, the elements of a consortium cause of action must be considered. When one spouse (the impaired spouse) is injured by the negligence of another, the other spouse (the deprived spouse) may recover from the tortfeasor for the loss the deprived spouse suffered by virtue of the impaired spouse's injury. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 430.) Loss of consortium encompasses two basic elements of the marital relationship: loss of support and loss of society, which includes companionship and sexual intercourse. (*Brown v. Metzger* (1984), 104 Ill. 2d 30, 34.) In addition to material services, consortium includes "elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity." *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 427; see generally Annot., 36 A.L.R.3d 900 (1971) (wife's right of action for loss of consortium); Annot., 74 A.L.R.3d 805 (1976) (measure and elements of damages in wife's action for loss of consortium).

A claim for consortium is a separate cause of action based upon the impaired spouse's claim for his own injury. (*Brown v. Metzger* (1983), 118 Ill. App. 3d 855, 859, 455 N.E.2d 834, 837.) An action for loss of consortium is grounded in a "transferred negligence" theory whereby a defendant's duty to act with reasonable care toward the impaired spouse is "transferred" to the deprived spouse. (118 Ill. App. 3d 855, 455 N.E.2d 834.) This transferred negligence means that a defendant's breach of his duty of care to the impaired spouse supports both the impaired spouse's negligence suit for his injury and the deprived spouse's suit for loss of consortium. (118 Ill. App. 3d 855, 455 N.E.2d 834.) Because the loss of consortium action derives from the impaired spouse's action for his injury, the action is dependent upon the establishment of the defendant's liability for the impaired spouse's injury. (118 Ill. App. 3d 855, 455 N.E.2d 834.)

Susan relies upon this last rule to argue that the verdicts here are inconsistent. Her argument is unpersuasive. While her entitlement to recovery is necessarily dependent upon Ace's liability to Dick, this rule does not alone require the conclusion that Ace's liability to Dick requires a verdict of liability in favor of Susan. Therefore, *Brown* does not specifically address the issue presented here.

■■ This issue appears to be one of first impression in Illinois and is the subject of sparse discussion in the cases. (See generally Annot., 66 A.L.R.3d 472 (1975) (validity of verdict or verdicts by same jury in personal injury action awarding damages to injured spouse but denying recovery to other spouse seeking collateral damages).) In *dicta*,

this court in *Manders v. Pulice* (1968), 102 Ill. App. 2d 468, 475, 242 N.E.2d 617, 620, suggested verdicts in favor of the impaired spouse and against the deprived spouse might be inconsistent. (See also Annot., 66 A.L.R.3d 472 (1975) (for a collection of cases holding that such verdicts are inconsistent).) We conclude the verdicts in the case at bar are inconsistent.

Our review of the record indicates that Susan established the necessary elements of her consortium claim. As in *Manders*, here the question of the tortfeasor's negligence is not in doubt; Ace has not challenged the jury's verdict in this regard on appeal. Concluding as we have that the jury's finding that Ace was negligent as to Dick is supported by the evidence, necessarily we must conclude that Susan has established that element of her consortium claim which requires the impaired spouse to be entitled to recovery before the deprived spouse can recover for injury to her consortium. (See *Brown v. Metzger* (1983), 118 Ill. App. 3d 855, 859, 455 N.E.2d 834, 837.) A deprived spouse must also establish his or her marriage to the impaired spouse at the time of the accident. (*Sostock v. Reiss* (1980), 92 Ill. App. 3d 200, 206, 415 N.E.2d 1094, 1099.) At trial, Susan testified she was married to Dick when he was injured. The record therefore establishes that she satisfied all the requirements for a verdict in her favor as to liability.

In spite of its finding against Ace on Dick's claim, the jury nonetheless returned a verdict in favor of Ace on Susan's consortium claim. In so acting, the jury complied with its instruction that no damages should be awarded to a plaintiff unless the jury first found liability as to that plaintiff. Our review of the record and evidence convinces us that the jury intended to find against Susan and simply did not understand, because of the absence of instructions, the elements of a consortium action and their interrelationship with the elements comprising the negligence action of the impaired spouse.

Ace argues that this court should construe the jury's verdict in favor of Ace on Susan's consortium claim as, in reality, an award of no damages. In its order denying the parties' post-trial motions, the trial court made a written finding that the jury's verdict in favor of Ace on Susan's consortium claim was actually a verdict in favor of Susan, but an award of "O" damages. As support for its interpretation of the verdict, Ace relies upon *Kimmel v. Hefner* (1962), 36 Ill. App. 2d 137, 183 N.E.2d 13, wherein a husband and wife both suffered personal injuries when their car was rear ended by the defendant Hefner. The jury first returned a $13,000 verdict in favor of the wife, but said nothing about the husband's claim for his own personal injuries, for

the loss of the services of his wife, and for the injury to consortium. Following the trial court's direction to the jury that it must return verdicts as to both plaintiffs, the jury returned with the same verdict as to the wife's claim and returned a verdict in favor of the husband but with an award of "$ No damages."

Only the husband's damage award was appealed in *Kimmel*. In affirming the jury's award of no damages to the husband, the *Kimmel* court concluded that the jury could have considered the wife's award as compensating both the husband and the wife for their injuries. As only the husband's award had been appealed, the court recognized the unfairness in remanding only the husband's award without providing the jury with the contemporaneous opportunity to reexamine the wife's award. The *Kimmel* court also stated that it could not say, based upon its examination of the record, that "damages clearly proven had been overlooked." 36 Ill. App. 2d 137, 142, 183 N.E.2d 13, 15.

Although not cited by either party, *Manders v. Pulice* (1968), 102 Ill. App. 2d 468, 242 N.E.2d 617, *aff'd* (1970), 44 Ill. 2d 511, is more apposite to the facts here and is effectively contrasted against *Kimmel*. While *Kimmel* involved an appeal only from the award to the deprived spouse, in *Manders*, like here, the awards to both the impaired spouse and the deprived spouse were appealed. We therefore are not precluded, as was the *Kimmel* court, from remanding the awards to both the impaired spouse and the deprived spouse for reconsideration by the jury. Also unlike *Kimmel*, the record in *Manders* as is true with the record here, contained substantial evidence establishing the damages of the deprived spouse. In *Manders*, the wife as the impaired spouse sought damages for injuries she received in an automobile accident, and her husband, the deprived spouse, sued for loss of consortium. The jury returned verdicts in favor of both plaintiffs and awarded damages of $6,000 to the wife and "O" damages to the husband. While approving of the wife's award, this court concluded the husband's award was against the manifest weight of the evidence because the record contained uncontroverted evidence that the wife was unable to perform household chores for a period of time, that her personality changed for the worse following the accident and that the husband had suffered a $500 loss due to his absence from work because of his wife's injuries.

The record here likewise contains uncontradicted evidence regarding injury to the deprived spouse's consortium. Concerning the element of companionship, Susan testified Dick was a fantastic husband and their relationship was very good prior to the accident. Following

the accident, he was in great pain, he became withdrawn and moody, and was depressed as a result of the medical bills and his inability to work. James Devine, a clinical psychologist who worked with Dick and Susan over a five-month period in 1984 regarding Dick's pain resulting from the accident, testified Susan had considered divorcing Dick because of his depression subsequent to the accident. In its brief, Ace cites no evidence from the record which contradicted the testimony regarding the change in Dick's personality and attitude. At oral argument and in its appellate brief, Ace contended Susan spent more time with Dick following the accident than before the accident. What is relevant, however, is not simply the amount of time but also the quality of their time together, which Susan testified suffered as a result of the accident.

Concerning the sexual intercourse component of consortium, Susan stated that before the accident, they engaged in sexual intercourse two or three times each week. For seven months following the injury to Dick's back, however, they did not engage sexual intercourse at all. On cross-examination, Susan testified that at the time of trial, she and her husband were engaging in intercourse once a week which represented a less active sex life than they had maintained prior to Dick's accident. Ace cites to no evidence in the record contradicting Susan's testimony regarding injury to their sexual relationship.

In addition to her testimony on injury to her companionship and sexual relationship with Dick, Susan offered testimony regarding the loss of services performed by her husband. Prior to the accident, when the parties lived in a three-bedroom, ranch-style home in Round Lake Beach, defendant would mow the lawn, wash windows, clean out the car, paint the home, and scrub the carpets. Following the accident, Susan said Dick did nothing around the home. At oral argument, Ace contended the jury could disbelieve this testimony because on the date when the accident occurred, Dick and Susan had moved from the Round Lake Beach residence and were living in a residence above the tavern. Despite the different residences, many of these services such as washing windows and automobiles and cleaning carpets would be required in either residence. As Susan testified Dick did nothing around the home after the accident, whereas before the accident "he did the normal things I would say a man would do," her testimony was uncontradicted that he performed no household services subsequent to his accident for a period of time.

Relying only upon one brief quotation from *McDonald v. Industrial Com.* (1968), 39 Ill. 2d 396, Ace contends the jury properly could have disbelieved Susan's uncorroborated testimony regarding her con-

sortium claim because her testimony that Dick earned between $250 to $300 per week in 1982 was contradicted by Dick's admission that the couple did not file a 1982 joint tax return because he was unemployed. Regardless of this inconsistency, Susan's testimony on injury to her companionship with Dick was corroborated by Marjorie Nadine Perry, Dick's mother, and George Lorig, a co-worker of Dick's. Perry described Dick as an relaxed, easy-going person with a happy family life before the accident who was very active in the lives of his children. Beginning in the fall of 1982 following the accident, Dick grew "very despondent," he withdrew from family and friends, he lost his sense of humor and cried on several occasions over his inability to work because of his injuries. At a birthday party for one of his children, Dick "refused to take part in any form of celebration."

Lorig testified he first became acquainted with Dick when they both worked as painters for the same employer. Lorig described Dick as an easy-going person who was satisfied with a moderate income before the accident. Following the accident, when Lorig again worked with Dick on a painting job, Dick was distraught over what had happened to him, was no longer good-natured and was definitely more irritable.

■ Ace has offered no argument that the jury could have disbelieved Lorig's and Perry's testimony which corroborated the testimony of Susan and Dr. Devine regarding the change in Dick's attitude and personality following the accident. We therefore find inapplicable the rule cited by Ace that uncorroborated testimony of a witness can be disbelieved by a jury if her credibility is impeached as to a relevant and significant point. As the testimony of these four witnesses on injury to the companionship element of consortium is uncontroverted, we conclude the jury's verdict, if construed as an award of "O" damages, is against the manifest weight of the evidence.

■ The question which remains is the extent of our remand. Our supreme court in *Manders v. Pulice* (1970), 44 Ill. 2d 511, 242 N.E.2d 617, affirmed this court's remand of the awards to the impaired spouse and to the deprived spouse even though only the award to the deprived spouse was found to be against the manifest weight of the evidence. The Illinois rule, the *Manders* court began, is to examine the verdict to ascertain the jury's intention and if the verdict is otherwise supportable, to mold the verdict into the proper form. (44 Ill. 2d 511, 517, 242 N.E.2d 617.) While acknowledging the possibility that the award to the impaired spouse was intended by the jury to compensate her alone and therefore should not be disturbed on remand, the *Manders* court found just as defensible the hypothesis that "the

jury intended to disregard the court's instructions and intentionally returned inconsistent verdicts." *Manders v. Pulice* (1970), 44 Ill. 2d 511, 518-19, 242 N.E.2d 617.

Here, we find no evidence that the jury intended to ignore the instructions with respect to Dick's negligence action. To the contrary, the failure of the parties to request and the court to submit an instruction defining the elements of a consortium action likely confused the jury. (See Annot., 66 A.L.R.3d 472, 493-95 (1975) (discussing cases permitting a verdict for the impaired spouse to stand although circumstances warrant new trial for the deprived spouse on question of damages for injury to consortium).) Ace was found liable to Dick and evidence existed in the record indicating that Dick had incurred approximately $31,000 in medical expenses as a result of the accident. Also, evidence was introduced from which the jury could have concluded that Dick was only intermittently employed following the accident because of his medical problems. This evidence in addition to the testimony from Dick regarding his pain and suffering supports the jury's award of $40,000 to Dick. Rather than attack this award, Ace concedes that "the jury was well within the limits of the record in fixing the damages" and requests this court to uphold the jury's damage verdict as to Dick. We find no basis for concluding that Dick's award is so large as to require the conclusion that it must contain an award of damages for Susan's consortium action.

We likewise find no basis for concluding that Dick's damage award and a subsequent award of damages to Susan on her consortium claim will result in a double recovery. Courts in Illinois and other States long have recognized the danger of a double recovery when the injured spouse sues for loss of his earnings and the impaired spouse sues in the consortium action for loss of support. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 426-27. See generally Annot., 74 A.L.R.3d 805, 819-21 (1976).) As a result of the instructions tendered to the jury here, however, the danger of a double recovery is minimal. The trial court instructed the jury that it could award as an element of Dick's damages resulting from Ace's negligence "[t]he value of earnings lost and the present cash value of earnings reasonably certain to be lost in the future." Loss of support was not included as an element of damages recoverable in Susan's consortium action. Instead, the jury was instructed it could only award to Susan in her consortium action damages for loss of Dick's services and for the reasonable value of the society, companionship and conjugal relationship of which she had been deprived. As the jury was not permitted to award Susan damages for the loss of Dick's support occasioned by Ace's negligence, we see no

danger that an award of damages to Susan on remand will result in a double recovery.

Apart from loss of support, the other elements of consortium damages—injury to companionship and conjugal relations—are personal to Susan and thus could not have been included in the jury's award to Dick. Absent the possibility that Dick's award contains an award of damages intended by the jury to compensate Susan for injury to consortium, we can discern no unfairness which will result in remanding Susan's action for a trial on damages while affirming the jury's award of damages to Dick. Accordingly, we affirm the judgment entered on the jury verdict in favor of Dick, reverse the judgment entered on the verdict in favor of Ace on Susan's consortium claim, direct entry of judgment in favor of Susan and remand Susan's action for a new trial solely as to her damages. In the retrial of Susan's consortium action, as in her first trial, Susan will not be permitted to recover as an element of her damages the loss of support of Dick caused by the accident.

■ In its cross-appeal, third-party plaintiff Ace raises as its sole issue whether the trial court abused its discretion in excluding the testimony of Ace's expert witness Douglas Morita, a mechanical engineer. The sufficiency of a witness's qualifications to testify as an expert is left to the broad discretion of the trial court. (*Ruffiner v. Material Service Corp.* (1985), 134 Ill. App. 3d 747, 755, 480 N.E.2d 1157, 1163.) We conclude the trial court abused its discretion in excluding Morita's testimony and, thus, remand this cause for a new trial.

Prior to trial, third-party defendant Lozier filed a motion to disqualify Ace's expert Morita from offering testimony regarding the display rack. Lozier challenged the testimony of Morita on two bases: (1) the subject matter of his testimony was within the ken of the average layperson; and (2) Ace did not establish that Morita possessed distinctive knowledge or experience regarding vertical panel merchandisers. On August 14, 1984, the trial court by written order granted Lozier's motion, finding "the subject matter of the case being within the ken of the average layman and not the proper subject for expert testimony." At trial, Ace again sought the introduction of Morita's testimony by way of an offer of proof. Following the offer of proof, the trial court denied Ace's request for reconsideration of its ruling regarding Morita's expert testimony. While admitting that Morita could be qualified as an expert in the right case, the court specifically found that "the ultimate issues in this particular case are really not beyond the understanding of the jury."

Prior to reviewing Morita's offer of proof, we first examine Ace's third-party complaint to determine the parameters of Ace's lawsuit. Ace premised its allegation that the rack was unreasonably dangerous and defective on four grounds: (1) inadequate construction due to unsafe materials; (2) inadequate design; (3) failure to provide instructions for the safe use of the rack; and (4) failure to provide warnings to customers regarding the safe removal of paneling.

To establish that the rack was designed improperly and that warnings and instructions were required, Ace proffered the testimony of Morita. Morita is a mechanical engineer and works for Polytechnic, Incorporated, as vice-president of engineering. He received a bachelor of science degree from Northwestern University in 1969 and, while at Northwestern, worked for two years for Lockheed Missiles and Space Company. During that period, Morita designed structures relating to the Poseidon program and performed systems safety analysis work relating to the Antelope Program. Following graduation, Morita worked for the United States Naval Ordinance Station in Forest Park in the areas of quality control, reliability, mechanical engineering, stress analyses and feasibility studies. He thereafter worked for the Illinois Institute of Technology Research Institute for six years during which time his duties included performance of systems safety analyses for government and private clients.

In its responsive brief filed in support of the trial court's decision to exclude Morita's testimony, Lozier argues Morita was not qualified to testify as an expert. Specifically, Lozier attacks Morita's qualifications because he had not designed or manufactured such merchandiser racks and had no experience with industry standards for similar racks. We disagree and find Morita properly qualified as an expert.

■ An expert is qualified where (1) his opinion relates to a science, profession, business, or occupation and is beyond the knowledge or experience of the average person; (2) he has sufficient skill, knowledge or experience so that his opinion will aid the trier of fact; and (3) the state of the art or scientific knowledge permits a reasonable opinion to be asserted by an expert. (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 243, 476 N.E.2d 427, 434.) A witness may be qualified by reason of knowledge, skill, experience, training or education. E. Cleary & M. Graham, Illinois Evidence sec. 702.2, at 454-55 (4th ed. 1984).

■ Morita's offer of proof demonstrates that he was a competent and qualified safety engineer, with a sound educational background and work experience. Moreover, he personally examined and measured the rack in question and surveyed the literature regarding

directions for stacking similar merchandiser racks. Under the circumstances, the objections raised by Lozier to Morita's qualifications at most go to the weight to be accorded his testimony and not to its admissibility. (See *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 244, 476 N.E.2d 427, 435.) We therefore conclude that Ace established Morita's qualifications to testify regarding the design of the rack and the necessity for instructions and warnings regarding its use.

The question remains whether the trial court abused its discretion in excluding Morita's testimony on the basis that the subject matter of his testimony was commonly understood by the average person. Expert testimony is admissible whenever it will assist the trier of fact to understand the evidence or to determine a fact in issue. Even as to matters within the common knowledge and experience of jurors, expert testimony is admissible where helpful to comprehension or explanation. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118; *Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514.) However, expert opinions on matters of common knowledge are not admissible unless the subject is difficult of comprehension or explanation. *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99.

In this case, Morita's testimony would have assisted the jury in understanding design alternatives to that employed by Lozier. Such design alternatives would have been relevant to the jury's determination whether the rack was defective and unreasonably dangerous. (See *Murphy v. Chestnut Mountain Lodge, Inc.* (1984), 124 Ill. App. 3d 508, 515, 464 N.E.2d 818, 823 (evidence of the existence of feasible design alternatives is relevant and admissible in actions predicated on strict liability).) Morita testified he surveyed other merchandiser racks in the marketplace by visiting six stores which sold paneling. He found two general rack designs: (1) shelves on which the paneling is displayed horizontally and flat; and (2) upright racks which display the product at an angle. Morita concluded Lozier's rack was unsafe because it did not restrain the paneling from falling. Morita recommended several modifications to make the rack safe: (1) incorporation of an overhead arm which would catch and maintain upright any paneling which began to fall forward; and (2) incorporation of a permanent restraining side arm which would extend part of the distance across the front of the display. In conjunction with his testimony, Morita designed an alternative barrier, referred to as defendant's Exhibit 24, based upon the specific dimensions of the Lozier rack.

This testimony of Morita was admissible because the existence of

design alternatives is not so easily comprehensible to jurors that they would not benefit from expert testimony. Lozier argues that his testimony was excluded properly because the only issue before the jury was whether the presence of removable restraining arms and the absence of instructions and warnings rendered the rack unreasonably dangerous. To facilitate its resolution of this question, however, the jury was entitled to hear expert testimony regarding design alternatives which would be relevant to the dangerousness of the rack design. (See, *e.g., Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749; *Moren v. Samuel M. Langston Co.* (1968), 96 Ill. App. 2d 133, 237 N.E.2d 759.) The trial court thus erred when it denied the jury the opportunity to hear this testimony regarding design alternatives.

The two cases cited by Lozier in support of its contention that expert testimony here was unnecessary are distinguishable. In *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483, *aff'd on other grounds* (1974), 57 Ill. 2d 19, the plaintiffs sought to introduce the expert testimony of a traffic engineer who would have testified that guardrails or barricades positioned between the street curb and the nearby picnic tables would have slowed down or deflected the driver's vehicle which jumped the curb and struck children seated at a picnic table. In affirming the trial court's exclusion of the expert testimony, this court in *Ray* accepted the trial court's conclusion that expert testimony was unnecessary to explain to the jury the danger caused by the close proximity of picnic tables to a heavily traveled road. Here, in contrast, the plaintiff was required to establish that the rack as designed was defective and unreasonably dangerous. The availability and configurations of alternative designs are not so obvious as to permit the conclusion that Morita's testimony would not have aided the understanding of the jury. Similarly, in *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, the supreme court ruled that, at the new trial following remand, expert testimony would not be admissible on the question of whether guardrails could have prevented the plaintiff's fall from the scaffold. Citing the rule that expert opinions cannot be permitted on matters of common knowledge unless the subject is difficult to comprehend and explain, the *Hernandez* court concluded the potential safety value of guardrails was not difficult to understand or to explain. The issue in the case at bar is whether the design of the rack and the absence of warnings and instructions rendered the rack defective and unreasonably dangerous. The comprehension and understanding of the jury would have been aided by Morita's testimony on the feasibility and availability of alter-

native designs.

The decision of our appellate court in *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749, relied upon by Ace is supportive of our conclusion. In *Sutkowski*, the administrator of the estate of the deceased employee brought suit on the theories of breach of warranty and strict liability against the manufacturer of strip-mining equipment. The machine, which removed materials from a seam of coal and then deposited the materials to one side, was 10 stories tall and weighed approximately 1,000 pounds. The decedent was crushed by a large rock while exiting the vehicle, and through the expert testimony of a State mining inspector, his administrator sought to prove the existence of design alternatives for the machine. The trial court excluded the expert testimony. On appeal, the court characterized the expert's offer of proof as disclosing that "the witness would have testified to design alternatives which could and should have been installed at the time of manufacture of the machine." (5 Ill. App. 3d 313, 318, 281 N.E.2d 749, 752.) Likewise, Morita's offer of proof concerned design alternatives which he concluded should have been incorporated prior to distribution of the product. While Lozier distinguishes *Sutkowski* on the basis that a juror would not likely have had knowledge of such a large piece of equipment, we nonetheless find *Sutkowski* supportive of our conclusion that the trial court abused its discretion in excluding the testimony of Ace's expert witness regarding available design alternatives for the merchandiser rack. See generally Annot., 4 A.L.R.4th 651 (1981) (admissibility of expert or opinion evidence that product is or is not defective, dangerous, or unreasonably dangerous).

■■ Lozier maintains that even if the exclusion of Morita's testimony is error, Ace suffered no prejudice because Ace managed to establish the points it would have made through Morita by its cross-examination of Richard Dyer, the vice-president of engineering of Lozier. We reject Lozier's contention for two reasons. First, the exclusion of Morita's testimony and the subsequent admission of Dyer's testimony on similar subject matter created an unfair advantage in favor of Lozier. *Cf. Murphy v. Chestnut Mountain Lodge, Inc.* (1984), 124 Ill. App. 3d 508, 515, 464 N.E.2d 818, 823 (where court acknowledged the unfairness resulting from trial court's allowance of testimony of one party's witness and exclusion of the testimony of the other party's witness on the existence and feasibility of safer designs).

Lozier responds that Ace cannot complain of Dyer's testimony because it elicited some of the testimony concerning design alternatives in its cross-examination of Dyer. However, the substance of Ace's

complaint is not that Dyer testified improperly, but that Morita's testimony was excluded improperly and that the prejudice to Ace was exacerbated because Lozier was able to present its testimony unrebutted by Ace's expert testimony. Moreover, we find unpersuasive Lozier's argument that Ace cannot claim prejudice because Ace elicited much of the testimony that it now claims is prejudicial. During Dyer's direct examination, Ace objected to his testimony regarding the engineering aspects of the rack which the trial court overruled. As Ace made an objection to Dyer's testimony which was overruled, it should not be precluded from arguing prejudice simply because it elicited testimony from Dyer covering design alternatives on cross-examination. *Cf. People v. Spates* (1979), 77 Ill. 2d 193, 198, (after denial of his motion *in limine,* defendant did not waive right on appeal to challenge the denial of his motion despite his subsequent introduction of the disputed evidence).

The second reason we reject Lozier's argument that Ace suffered no prejudice is that Morita offered additional testimony not presented by Dyer. While Dyer did admit on cross-examination that a permanent restraining arm could be designed for the rack and that installation instructions and warning signs could be provided by Lozier, Morita offered additional testimony which the jury did not hear through Dyer. For example, Morita stated that he had conducted a survey of six retailers of plywood and found two basic industry designs for merchandiser racks, one of which enables the retailer to lay the paneling flat. He also testified that the rack in question was unsafe because the restraining arm was removable and that instructions and warnings should have been provided by Lozier. Moreover, he surveyed the literature mailed to customers by manufacturers of merchandiser racks and found instances where manufacturers provided installation instructions concerning the stacking of paneling. Because Morita's testimony was in significant respects different from that of Dyer's, we find unpersuasive Lozier's claim that Ace suffered no prejudice as a result of the exclusion of Morita's testimony.

Moreover, we are doubtful that the testimony of Dyer, Lozier's witness, can replace the expert testimony of Ace's witness who was precluded by the trial court from testifying. We fail to see, for example, how a grudging concession by Dyer that design of a permanent restraining arm is possible would be equivalent to Morita's testimony regarding several specific design alternatives which in his opinion would have made the rack safe. For these reasons, therefore, we reject Lozier's argument that Ace was not prejudiced by the trial court's improper exclusion of the testimony of its expert witness. Ac-

cordingly, we reverse the judgment of the circuit court of Lake County in favor of Lozier and remand this cause for a new trial.

In sum, we affirm that part of the judgment finding that Mark and Dick were each 50% comparatively negligent; we reverse the judgment against Susan on her consortium claim, direct a verdict for her on that count and remand for a new trial to assess her damages; and we reverse the judgment in favor of Lozier and remand that action for a new trial in accordance with the views expressed herein.

Affirmed in part; reversed and remanded in part.

NASH, P.J., and SCHNAKE, J., concur.