(No. 41961.—

PHYLLIS MANDERS *et al.* Appellees, *vs.* PETER PULICE, Appellant.

*Opinion filed January 28, 1970.—Rehearing denied March 23, 1970.*

CORRIGAN, MACKAY, QUETSCH .AND O'REILLY, of Wheaton, (ROGER K. O'REILLY, of counsel,) for appellant.

MILLER, GORHAM, WESCOTT & ADAMS, of Chicago, (MARVIN F. METGE, of counsel,) for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant appeals from a judgment of the Appellate Court for the Second District, which reversed two judgments entered by the circuit court of Du Page County in a

suit for personal injuries by the plaintiff Phyllis Manders and for loss of consortium by the plaintiff Frank Manders, her husband. New trials were ordered by the appellate court for both plaintiffs.

The complaint alleged that the defendant negligently drove his automobile against the car in which Mrs. Manders was riding as a passenger, causing her injuries. Verdicts were returned for the plaintiffs and damages assessed in favor of Phyllis Manders at $6000 and at "0" for Frank Manders. The plaintiffs appealed to the appellate court, urging the inadequacy of the damages awarded and, as they termed it, the inconsistency of the verdicts. That court, with one of its members dissenting, ruled that the award to Phyllis Manders was not contrary to the manifest weight of the evidence, but that the "0" damages award to Frank Manders was palpably inadequate. The court remarked: "Unless we are to speculate that the verdict as to the wife was intended to be adequate as to the family, it appears that damages on the husband's consortium claim have been overlooked and it appears highly possible that the jury intended to disregard the instructions and deliberately returned inconsistent verdicts." (*Manders* v. *Pulice,* 102 Ill. App. 2d 468, 476.) The defendant sought and we granted leave to appeal from the judgment of the appellate court.

The facts are not basically in dispute and we adopt the appellate court's narration of them. "The accident took place on August 25, 1965, when the car in which Mrs. Manders was riding was struck head-on by a car driven by defendant. The car in which plaintiff was traveling was moving slowly while passing the scene of an earlier accident. Defendant's car was estimated by an eyewitness to be traveling at between 30 and 40 miles per hour when it crossed the center line and struck the car in which plaintiff was riding. In the collision, Phyllis Manders was thrown from the rear seat up against the front windshield, and removed from the scene to a hospital where she remained for six days. The

deposition of her attending physician, Dr. Glen Asselmeier, evidenced that Mrs. Manders had received a compound comminuted fracture of the tibia, and a fracture of the fibula of her right leg; cerebral concussion; severe laceration of the lateral aspect of her nose; a dislocation of her right ankle; and multiple abrasions and bruises. During her stay in the hospital she made no complaint of headaches or radiating pain in her legs. When she was discharged from the hospital, her condition was good. She had a long leg cast on and walked on nonweight bearing crutches. When he next saw her on September 7, 1965, she was still in the long leg cast and had some pain in her leg, but not enough to require medication. She complained of back problems which he associated with her altered gait, and diagnosed as low back strain. When he next saw her on September 21, 1965, his findings were the same except he was not satisfied with the cosmetic aspect of her nose which had been sutured. After a number of further examinations and a resection of the scar on her nose resulting in a 'plastic fine line scar', he discharged her after March of 1966. At that time her leg had healed well and was weight bearing. Throughout, she had complained of 'vague' dizziness and 'vague' back problems, and of pain in her leg. On discharge he advised her to return if she had further complaint, but she did not do so. In his opinion all of her injuries were from the accident. Dr. Orren D. Baab, an orthopedic surgeon, testified that he examined Phyllis Manders on June 13, 1967. She walked well with a 'temporary' limp when she got up from the chair. The scar on her nose was visible but 'not cosmetically undesirable'. There were small visible scars under the right and left eyebrow, a bony prominence over the right eyebrow, and a thick scar behind her shoulder. He found that the right calf measured $13\frac{1}{4}$ inches, the left calf 14 inches. The right ankle was a little smaller than the left. The right leg was $\frac{3}{16}$th of an inch shorter than the left leg, but this would not produce a limp

nor any subsequent disability in the knee or hip. There was 'an early arthritis' of the ankle joint, with a limitation of motion in the foot. It was his opinion that if she restricted herself to decreased activity she would experience only some ache, stiffness and discomfort, which she could handle herself with aspirin; but that if she assumed a normal life she would in the future require more definitive care and stronger medication. While both the limitation of motion in the ankle, and the shortening of the right leg were permanent conditions, the difference between the circumferences of the calves would improve with exercise. The medical and hospital expenses were $1,282.37. Mrs. Manders' lost wages for the twenty-nine or thirty weeks she was absent amounted to about $3,300. The evidence on the claim for loss of consortium as testified to by Frank Manders consisted of the following: Prior to August 25, 1965, Mrs. Manders was in good health and she and her husband did a great deal of dancing, bowling, ice skating and roller skating. She did the housework, cooking, laundry and other chores in taking care of the family. Her mother-in-law stayed with her for the first two weeks following the hospitalization and was paid $75. Thereafter her husband did most of the chores around the house, with assistance from their two daughters, as she was in a wheel chair for most of the time during the months following the accident. Mrs. Manders resumed her full household duties about two months before the trial, in June, 1967. Following the hospitalization, Phyllis Manders was short-tempered, very irritable and could not remember anything that was told to her. Her gait was still very labored and awkward. She could not 'communicate' with her husband after the accident. There was a change in her sleeping habits. At least one night a week Mr. Manders would wake up in the middle of the night and find Mrs. Manders sitting in the front room. Mrs. Manders still limps on occasions. He testified he lost $500 in wages for unreimbursed time he took off from work to take his wife to the Doctors.

(Dr. Asselmeier's testimony, however, accounted for ten to eleven visits of which he had made records, while both plaintiffs testified to between twenty and twenty-five visits.)" The doctor also testified in his deposition to several visits by the plaintiffs which he did not record.

The defendant contends that the appellate court erred in judging the no-damages verdict in favor of the plaintiff Frank Manders to have been improper and contrary to the manifest weight of the evidence. Further, the appellate court erred, the defendant argues, in remanding the case of plaintiff Phyllis Manders for a new trial.

We consider that the appellate court correctly held that the jury verdict with "0" damages in favor of Frank Manders for loss of consortium was contrary to the manifest weight of the evidence. Loss of a spouse's companionship and related benefits of marriage, as well as loss of material services and unreimbursed expenses incurred because of the spouse's injury, are elements to be considered in assessing damages in a suit for loss of consortium. (*Dini* v. *Naiditch*, 20 Ill.2d 406, 427; *Chicago & Milwaukee Electric Ry. Co.* v. *Krempel*, 116 Ill. App. 253, 255.) The evidence made clear that Mrs. Manders, who had been an active, even athletic woman, became unable because of her injuries to perform even simple household tasks for a period of at least five months. The injuries affected her personality and she changed from a wife of even, pleasant disposition to a withdrawn, uncommunicative person, short of temper and upset by irregular sleeping habits. There was evidence that the plaintiff-husband sustained pecuniary damages of approximately $500 through loss of wages, which resulted from the husband's absences from work. He testified he was absent a full week during his wife's hospitalization and thereafter about 20 half-days to permit him to escort his wife to the doctor's office. The only challenge to this evidence by the defendant was made when one of the wife's physicians on cross-examination testified that the wife may

have made fewer visits to his office than her testimony and that of her husband described. Even if one prefers the physician's testimony, there remained clear proof of damage to the plaintiff-husband. The appellate court properly reversed and remanded for a new trial for Frank Manders.

The question now presented is whether the appellate court, which held that the $6000 verdict in favor of the plaintiff-wife, considered separately, was not inadequate, properly ordered a new trial for the plaintiff-wife as well as for plaintiff-husband.

The Appellate Court for the Fourth District in *Kimmel v. Hefner,* 36 Ill. App. 2d 137, viewed a somewhat similar question. There a verdict for $13,000 was returned in favor of a plaintiff-wife in a personal injury action. The jury first failed to return a verdict on the plaintiff-husband's suit for loss of consortium but, when directed by the court to render a verdict, returned one in his favor. However, the jury awarded him "no" damages and he alone appealed. The court affirmed the no-damages judgment but it suggested it was doing so because there had been no appeal from the judgment in favor of the plaintiff-wife.

Courts of other jurisdictions have considered similar questions arising from suits for personal injury and loss of consortium but their responses have not been uniform. Some courts classify verdicts which appear to conflict as inconsistent and summarily direct new trials. Other courts attempt to interpret the verdicts and to support them, if proper. See Annot. 36 A.L.R.2d 1333; *Guinn v. Millard Trucking Lines,* 257 Iowa 671, 134 N.W.2d 549.

This court has said that a verdict should be examined with a view to ascertaining the intention of the jury in returning the verdict. If it is otherwise supportable the verdict will be molded into form and made to serve unless there is doubt as to its meaning. (*Cf. Western Springs Park District v. Lawrence,* 343 Ill. 302; *Law v. Sanitary District of Chicago,* 197 Ill. 523.) Although made under different cir-

cumstances we consider these observations valid, whether a single verdict standing by itself is examined or whether more than one verdict are examined as they may relate to each other, as here.

Viewing the background of the verdicts here, there are circumstances of obvious liability on the part of the defend-ant. His auto crossed the center line of the road and struck the auto in which the plaintiff-wife was a rear seat passenger. The plaintiff-husband was not present, so one cannot suppose that the jury deemed him to have been guilty of contributory negligence and meant to return in effect a verdict against the plaintiff-husband. (See *Chapin* v. *Foege*, 296 Ill. App. 96.) The plaintiff-wife's pecuniary losses in the form of medical expenses and loss of earnings attributable to her injuries amounted to approximately $4600. In addition she sustained a permanent limitation of motion in an ankle and minor but permanent shortening of a leg, as well as scars, some of them facial. The defendant's attorney in his closing argument suggested that the jury consider awarding the plaintiff-wife $6500 as "fair and reasonable compensation." He suggested an award of $250 for the plaintiff-husband for expenses and loss of services. The jury returned a verdict and award of $6000 in favor of the wife and though there was a verdict in favor of the husband, the jury awarded him "0" damages.

We do not believe that it can be reasonably said that under these circumstances the jury intended the award to the wife to include the damages of the husband, so that the award to her was to be considered an award to both, as some jurisdictions have found in given cases. One may hypothesize that the jury intended that the award to the plaintiff-wife was to be solely in her favor, that the failure of the jury to make an award to the husband for his demonstrated damages was due to simple inattention and that a new trial for the wife is unnecessary. However, the hypothesis that the jury intended to disregard the court's instructions and

intentionally returned inconsistent verdicts appears to be just as defensible. The appellate court, for example, considered that it was "highly possible" the jury did deliberately disregard the instructions.

We conclude it cannot be ascertained with definiteness what the jury here, assuming it to have otherwise acted properly, intended by its verdicts.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*