BILL CASEY *et al.*, Plaintiffs-Appellants, v. ROY POHLMAN, Defendant-Appellee.

Fifth District   No. 5—89—0151

Opinion filed June 13, 1990.

John Womick & Associates, Chartered, of Carbondale, for appellants.

William J. Novick, of Fowler & Novick, of Marion, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Bill Casey and Kay Casey, appeal from a judgment of the circuit court of Union County entered on jury verdicts in favor of plaintiffs and against defendant, Roy Pohlman. The jury returned a verdict in favor of plaintiff Bill Casey in the amount of $57,000 reduced by 40% for plaintiff's contributory negligence. The jury returned a verdict in favor of plaintiff Kay Casey but awarded her no damages for her loss of consortium claim. Plaintiffs raise the following issues: (1) whether the trial court erred in refusing to direct a verdict or enter a judgment notwithstanding the verdict (*j.n.o.v.*) in favor of plaintiff Bill Casey on the issue of defendant's negligence, and (2) whether the trial court erred by entering judgment on the verdict in which the jury found in favor of plaintiff Kay Casey on her loss of consortium claim, but awarded her no money damages. We affirm in part, and reverse and remand in part.

This appeal arises out of a suit to recover damages for personal injuries and loss of consortium sustained by plaintiffs as the result of a collision between Bill Casey's pickup truck and a semi-tractor pulling a trailer full of logs driven by defendant. On March 17, 1987, Bill Casey, a 70-year-old retired farmer, was traveling in a westerly direction on Route 146 in Union County. Route 146 is a two-lane highway. The place where the collision occurred is straight and level. Defendant was traveling westbound on Route 146. A witness to the collision testified that he saw plaintiff before the collision when plaintiff passed the intersection of Route 146 and Interstate 57. The witness was exiting from Interstate 57 and was waiting at a stop sign in order to turn onto Route 146. The witness noticed plaintiff, who was directly in front of a log truck driven by defendant. The witness estimated that defendant was "a couple of car lengths" behind plaintiff. There were also two cars following defendant's log truck. The witness then pulled out onto Route 146 after all four cars passed. This witness, who was acquainted with plaintiff prior to the collision, knew where plaintiff lived and testified that plaintiff was heading in the direction of his home and traveling at approximately 40 to 45 miles per hour. The two cars following defendant's log truck passed both plaintiff and defendant, leaving the witness directly behind defendant. The witness stated he could see plaintiff's tires from underneath the log truck, but he could not see whether plaintiff used his turn signal. He testified that

at plaintiff's driveway, defendant pulled out into the left lane of traffic to pass plaintiff, but because plaintiff was turning left into his driveway, plaintiff and defendant collided.

Defendant testified that he first saw plaintiff when plaintiff was approximately 100 feet in front of him. According to defendant, plaintiff's right rear and right front tires were off the pavement on the shoulder of the road, and plaintiff was traveling between 20 and 25 miles per hour. Defendant did not see a turn signal on the back of plaintiff's truck. He believed that plaintiff was pulling off to the right side of the roadway, so defendant pulled over into the left lane, which he referred to as "the passing lane." When defendant got into the passing lane, plaintiff came across in front of him. Defendant applied his brakes in an attempt to avoid hitting plaintiff, but the vehicles collided. The right front of defendant's semi-tractor collided with the left rear of plaintiff's truck. After impact occurred, both parties' vehicles went off to the left side of the roadway ending up near plaintiff's driveway.

Plaintiff testified that he turned on his left turn signal approximately 300 feet before his driveway, and that approximately 70 to 80 feet before his driveway, his truck was hit in the rear. Plaintiff stated that when the collision occurred, he was in the westbound lane. After impact, plaintiff crossed in front of defendant's truck and went off to the left side of the roadway near his driveway.

The responding police officer testified that the collision occurred approximately two-tenths of a mile west of Interstate 57 on Route 146. He noted that there was debris in the roadway from the collision. Antifreeze, which in his opinion came from the accident, was located in the westbound lane toward the center line.

Plaintiff received injuries to his neck, head, and arm from the collision. He spent two weeks in the hospital as a result of injuries caused by the collision and continues to have pain in his neck, arm, and shoulders. Plaintiff cannot work on his farm as he once did and has had to hire people to complete projects that he would have been able to complete himself before the accident. For example, plaintiff hired someone to put his seedbed down, which he stated cost him $12,000. He also hired a man to do bulldozer work for $40,000. Plaintiff stated that had he not been injured, he could have done between $12,000 and $15,000 worth of the $40,000 job himself. Kay Casey testified that her husband had been an active man who was able to play ball with his grandchildren, do work on his farm, and ride horses regularly. Since the accident, her husband has periods of pain in which "he has no desire to go anywhere or do anything that would be plea-

surable for me or him both." She finds this "depressing, but I just take it for granted that he doesn't feel good." Mrs. Casey testified that she was not out any money because of her husband's injury, but had lost his love and affection in that her husband could not participate in activities with her that he had been able to participate in prior to the accident. On cross-examination, Mrs. Casey admitted that at the time of her deposition she stated that she had not lost any love or affection because of her husband's injury. She explained, however, that at the time she was asked the question, she believed the defense attorney was asking her about her and her husband's sexual activities.

After trial, the jury returned a verdict in favor of Bill Casey in the amount of $57,000, reduced by 40% for plaintiff's contributory negligence. The jury also returned a verdict in favor of Kay Casey, but awarded her no damages.

The initial question raised in this appeal is whether the trial court erred in refusing to direct a verdict or enter a *j.n.o.v.* in favor of plaintiff on the issue of defendant's negligence. Plaintiff argues that defendant's liability is clear, as he struck plaintiff's vehicle in the rear and that there was no evidence that plaintiff was contributorily negligent; therefore, the case should be reversed and remanded with directions for the trial court to enter judgment for plaintiff for $57,000 plus costs. In reply, defendant contends that there is definitely a dispute as to how the occurrence took place, and there is sufficient evidence to support the jury's finding of 40% contributory negligence on the part of plaintiff. We agree.

■ The standard applied in determining whether to grant a directed verdict or a *j.n.o.v.* is whether all of the evidence, when viewed in the light most favorable to the nonmoving party, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Where the evidence demonstrates that there is a factual dispute, it is error for the trial court to direct a verdict or to enter a *j.n.o.v.*, as it is the function of the jury to decide whether the defendant exercised due care under the circumstances. *Beeler v. Chem-Lawn Corp.* (1989), 183 Ill. App. 3d 648, 652, 539 N.E.2d 290, 292.

■ Plaintiff maintains that in rear-end collision cases there is a line of precedent for holding that the driver of the rear vehicle is negligent as a matter of law. In support of this position, plaintiff cites *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664, 380 N.E.2d 37, and *Wooff v. Henderson* (1964), 46 Ill. App. 2d 420, 197 N.E.2d 103. The *Burroughs* court specifically stated:

"In light of general experience and common knowledge, the evidence before us reveals that the defendant was not attentive while driving and therefore, negligent. A driver approaching from the rear has the duty to keep a safe lookout and he must take into consideration the fact that he may be required to stop or slow his vehicle suddenly. [Citations.] Furthermore if he does not maintain a proper lookout for traffic ahead he is negligent. [Citation.]" *Burroughs*, 63 Ill. App. 3d at 667, 380 N.E.2d at 39.

■ Plaintiff argues that the application of *Wooff* and *Burroughs* to the instant case demonstrates that defendant's actions constituted negligence and plaintiff's actions did not. (See also *Zaeh v. Huenke* (1979), 70 Ill. App. 3d 39, 388 N.E.2d 434; *Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, 350 N.E.2d 219; *Barnash v. Rubovits* (1964), 46 Ill. App. 2d 409, 197 N.E.2d 134.) While we do not dispute the cases cited by plaintiff, other cases have held that a rear-end collision does not automatically create an inference as a matter of law that the driver of the rear car was negligent, that he was following too closely, or that he was driving too fast for conditions. Instead, these cases have held that it is the responsibility of the trier of fact, herein the jury, to determine whether the rear driver was acting reasonably under the circumstances or that the accident was unavoidable. *Strasma v. Rager* (1986), 145 Ill. App. 3d 826, 829, 495 N.E.2d 1343, 1344; *Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 145, 479 N.E.2d 976, 979; *Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 163, 392 N.E.2d 183, 186.

■ In the cases relied upon by plaintiffs, there were no facts to support any inferences that the defendants were misled by conduct on the part of the plaintiffs which either proximately or contributorily caused the collision. In the instant case, however, as in the cases holding contra to plaintiff's position that a rear-end collision automatically creates an inference as a matter of law that the rear car driver was negligent, the evidence is conflicting as to whether plaintiff was in any way negligent in the operation of his pickup truck. The evidence, viewed in a light most favorable to defendant, shows that plaintiff was driving slowly with his right rear and front tires off the roadway on the shoulder. Defendant testified plaintiff did not have a turn signal on the back of his truck. He believed plaintiff was pulling off the right side of the roadway, so defendant pulled into the eastbound passing lane in order to pass plaintiff. According to plaintiff himself, two cars had passed him just prior to the collision between plaintiff and defendant. Whether plaintiff's conduct was negligent and

whether it proximately contributed to the collision were proper questions of fact for the jury. We cannot say that the inferences which might be reasonably drawn from this evidence so overwhelmingly favor the plaintiffs that no contrary verdict could ever stand. Accordingly, plaintiffs' motions for a directed verdict and for a *j.n.o.v.* were properly denied.

The remaining question is whether the trial court erred by entering judgment on the verdict in which the jury found in favor of plaintiff, Kay Casey, on her loss of consortium claim, but awarded no money damages. Plaintiff argues that it is inconsistent for the jury to return a verdict in favor of the impaired spouse and the deprived spouse and then award no damages to the deprived spouse for her loss of consortium claim where there was evidence to support such a claim. Defendant replies that the verdict was not inconsistent, but rather, plaintiffs failed to prove actual damages because Kay Casey herself testified that she did not sustain any loss. We disagree with defendant and find that Kay Casey did present evidence of damages for which she could recover.

■■ ■ A claim for loss of consortium is a separate cause of action based upon the impaired spouse's claim for his own injury. (*Brown v. Metzger* (1983), 118 Ill. App. 3d 855, 859, 455 N.E.2d 834, 837, *aff'd* (1984), 104 Ill. 2d 30, 470 N.E.2d 302.) An action for loss of consortium is based upon a transferred negligence theory whereby a defendant's duty to act with reasonable care toward the impaired spouse is transferred to the deprived spouse. (118 Ill. App. 3d at 858, 455 N.E.2d at 837.) Loss of consortium incorporates two basic elements of the marital relationship: (1) loss of support, and (2) loss of society, which includes companionship and sexual intercourse. *Pease v. Ace Hardware Home Center* (1986), 147 Ill. App. 3d 546, 555, 498 N.E.2d 343, 350.

In the instant case, the evidence was clear that Mr. Casey had been an active 70-year-old retiree prior to the accident, but because of injuries caused by the accident is unable to perform farming duties around his farm, is unable to play as actively with his grandchildren, and is unable to ride horses. Mrs. Casey testified that since the accident her husband has periods of pain in which "he has no desire to go anywhere or do anything that would be pleasurable for me or him both." The injuries to Mr. Casey also affected the parties financially, as Mr. Casey has had to hire people to do work around the farm that he ordinarily would have done himself. However, Mrs. Casey did testify on cross-examination that she was not out any money due to her husband's injury. The following colloquy between Mrs. Casey and the

defense attorney on cross-examination is enlightening as to the loss of consortium issue:

"Q. And you have not lost any love or affection because of the injury that you are aware of?

A. Sure.

Q. Sure; do you mean yes or no?

A. Yes, I have.

Q. Ma'am?

A. Yes, I have.

Q. You have not knowingly lost any loss of consortium, have you?

A. No. Tell me the definition of consortium.

Q. Do you remember when your deposition was taken at your attorney's office?

A. Yes, I do.

Q. In May of 1988? Do you remember that?

A. Yes, I do.

Q. And the question was asked of you *** was this question asked of you? 'Have you lost any love or affection because of his injury that you are aware of?' Your answer, 'No.' Was that question asked of you and did you give that answer?

A. I thought you were talking about sex, and people our age I thought *** that was what I was talking about.

Q. Well, the question is whether that question was asked of you and did you give that answer? That's the question.

A. I would say I did if you said I did.

Q. Also, was this question asked of you and did you give this answer? The question, 'So, I take it that you have not knowingly lost anything personally; love, affection or loss of consortium or anything of that sort?' The answer, 'No, I just answered that.' Now, was that question asked of you and did you give that answer?

A. If you said I did, I'd say I did.

Q. I'm asking you if that question was asked of you and did you give that answer?

A. I have lost affection and going places and doing things that we would ordinarily do on account of Bill's condition.

Q. I see, but you refuse to answer my question?

A. Pardon me?

Q. I asked you whether that question was asked of you and did you give that answer? That's the question before the house today.

A. And I said that I guess I did if you say I did. If it was under oath, I'm sure I said that.

MR. NOVICK: That's all that I have. Thank you."

On redirect, plaintiff's attorney attempted to rehabilitate the witness by having her explain her idea of loss of consortium:

"Q. Kay, when you were asked the questions about consortium in your deposition, what did you understand that term to mean?

A. That's what I thought it was. I thought it was sex and at our age, why, anybody around here that is our age, which they are probably not, that that would be a big laugh.

Q. That's something you do not want to go into?

A. Right, I would rather just drop that.

MR. WOMICK: Thank you.

MR. NOVICK: I don't want to get into it either. I have no questions."

It is apparent to us after review of the transcript that Mrs. Casey clearly felt uncomfortable talking about loss of consortium because in her mind this issue related only to loss of sexual relations. Mrs. Casey was clear, however, that because of her husband's injuries she had suffered loss of society, specifically, loss of her husband's companionship.

■ It cannot be ascertained with definiteness what the jury here intended by its verdict. The zero verdict could have meant that the jury did not feel Mrs. Casey sustained any damages as the result of the accident. However, we find that the record reflects that Mrs. Casey did, in fact, suffer loss of consortium as a result of the accident. The award of "0" damages is therefore against the manifest weight of the evidence.

The question which remains is the extent of our remand. In *Manders v. Pulice* (1970), 44 Ill. 2d 511, 256 N.E.2d 330, our supreme court affirmed the appellate court's remand of the award to the impaired spouse even though only the award to the deprived spouse was found to be against the manifest weight of the evidence. The *Manders* court stated that in Illinois the rule is to examine the verdict to ascertain the jury's intention and if the verdict is otherwise supportable, to mold the verdict into proper form. (44 Ill. 2d at 517, 256 N.E.2d at 333.) The *Manders* court then stated:

"One may hypothesize that the jury intended that the award to the plaintiff-wife was to be solely in her favor, that the failure of the jury to make an award to the husband for his demonstrated damages was due to simple inattention and that a new

trial for the wife is unnecessary. However, the hypothesis that the jury intended to disregard the court's instructions and intentionally returned inconsistent verdicts appears to be just as defensible." 44 Ill. 2d at 518-19, 256 N.E.2d at 334.

In other circumstances, courts have found that it is not necessary to remand both the awards to the impaired spouse and to the deprived spouse. For example, in *Pease v. Ace Hardware Home Center* (1986), 147 Ill. App. 3d 546, 498 N.E.2d 343, the court found that there was no basis for concluding that the award to the impaired spouse was so large as to require the conclusion that it contained an award of damages for the deprived spouse's consortium claim. (147 Ill. App. 3d at 560, 498 N.E.2d at 352-53.) Because the *Pease* court concluded that there was no possibility that a subsequent award of damages to the deprived spouse on her consortium claim would result in a double recovery (147 Ill. App. 3d at 560, 498 N.E.2d at 353), only that portion of the judgment concerning the deprived spouse's consortium claim was reversed and remanded.

■ We likewise find no basis for concluding that Mr. Casey's damage award and a subsequent award to Mrs. Casey on her consortium claim will result in double recovery. As we previously stated, the evidence adduced at trial supported the award of $57,000 reduced by 40% for Mr. Casey's contributory negligence. We therefore find it unnecessary to provide another jury with the opportunity to reexamine Mr. Casey's award.

For the foregoing reasons, that portion of the judgment finding defendant liable in the amount of $57,000, reduced by 40% for plaintiff's contributory negligence, is affirmed; that portion of the judgment concerning Mrs. Casey's consortium claim is reversed, and the cause is remanded for a new trial in accordance with the views expressed herein.

Affirmed in part; reversed and remanded in part.

LEWIS, P.J., and HARRISON, J., concur.