ROCCO MUSOROFITI ET AL. *v.* JUDITH A. VLCEK ET AL.
(AC 19677)

Foti, Dranginis and Dupont, Js.

---

[8] See footnote 1.

Argued March 27—officially released August 28, 2001

*Thomas M. DeLillo*, with whom, on the brief, was *James E. Mattern*, for the appellants (plaintiffs).

*Keith S. McCabe*, for the appellees (defendants).

*Opinion*

DUPONT, J. The plaintiff Rocco Musorofiti (plaintiff husband) appeals from the judgment rendered following the denial of his motion for an additur or to set aside as to damages only a jury verdict in his favor against the defendants, Judith A. Vlcek and Ralph Vlcek, on his negligence claim. The plaintiff Barbara Musorofiti (plaintiff wife) appeals from the judgment in favor of the defendants as to her loss of consortium claim. On appeal, the plaintiff wife claims that the trial court improperly refused to charge the jury on the loss of consortium claim. Both plaintiffs claim that the court improperly admitted an exhibit pursuant to the learned treatise exception to the hearsay rule and that such admission prejudiced the plaintiffs, and they claim that the court improperly granted the defendants' motion in limine, which precluded the plaintiffs from cross-examining the defendants' expert concerning a medical malpractice action against that expert. We reverse the judgment for the defendants on the loss of consortium count and affirm the judgment for the plaintiff husband as to the amount on the negligence count.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff husband and the defendant Judith A. Vlcek were two drivers involved in an automobile accident on February 27, 1996, in East Lyme. As a result of the accident, the plaintiff husband allegedly suffered injuries to his spine

and temporomandibular joint (TMJ). The plaintiffs filed a two count complaint against the defendants.[1] Count one alleges negligence by the defendants with respect to the plaintiff husband's injuries from the automobile accident. Count two alleges that the plaintiff wife suffered a loss of consortium as a result of the defendants' negligence. The defendants' answer contains a general denial.

At trial, the court refused to charge the jury on count two, the loss of consortium claim. On April 7, 1999, the jury returned a verdict in favor of the plaintiff husband on count one in the amount of $10,000 ($3000 for economic damages and $7000 for noneconomic damages). On April 12, 1999, the defendants filed a motion for a collateral source reduction, claiming entitlement to certain setoffs pursuant to General Statutes § 52-225a. The court granted the defendants' motion and ordered an offset in the amount of $2962. On April 16, 1999, the plaintiff husband filed a motion for additur or to set aside the verdict as to damages only.[2] Thereafter, on May 17, 1999, the court denied the plaintiff husband's motion and rendered judgment in his favor on count one in the amount of $7038. On August 18, 1999, the plaintiffs filed a motion to complete the record and to render a judgment as to count two, the loss of consortium claim. On September 10, 1999, the court granted the motion and rendered judgment for the defendants as to that count. We will provide additional facts as necessary to the specific claims.

I

We first address the court's refusal to charge the jury on the plaintiff wife's loss of consortium claim. The

[1] Although Ralph Vlcek was not operating the automobile at the time of the accident, the plaintiffs alleged his liability pursuant to the family car doctrine. See General Statutes § 52-182. Ralph Vlcek and Judith A. Vlcek, husband and wife, jointly own the automobile.

[2] A verdict may be set aside on the ground that damages are inadequate. General Statutes § 52-228b.

plaintiff wife argues that she presented sufficient evidence to support the claim and, therefore, the law required the court to charge the jury on her cause of action. The plaintiff wife asserts that the proper remedy for the failure to charge is a retrial of both the husband's negligence claim and her loss of consortium claim. According to her, the "inextricably intertwined" nature of the two causes of action requires a retrial of both claims.

The defendants claim that the plaintiff wife has failed to supply this court with an adequate record for review of the failure to charge. The defendants argue, in the alternative, that if this court finds that the record is adequate for appellate review and that the plaintiff wife was entitled to a charge on her cause of action, the proper remedy is a hearing in damages limited to the wife's damages relating to her loss of consortium claim. We agree with the plaintiff wife that the court should have charged the jury as to her loss of consortium claim, but agree with the defendants as to the remedy.

## A

The following additional facts are relevant to our resolution of this issue. At trial, the plaintiff husband testified concerning certain changes that his marriage had undergone since the accident. Specifically, he testified that the injuries he sustained in the accident had "put a strain on my marriage. My wife—as I sit here today I realize just how much I've put her through, I went through periods of grouchiness, uncooperative, just downright nasty, which is really not my regular persona. I'm not really like that. And I've really put her through an awful lot . . . . I can't do a lot of things that I used to do that I would even like to do." The plaintiff husband also testified that he experienced difficulty and inability in helping with certain tasks around the house.

The plaintiff wife also offered testimony concerning the effect her husband's injuries had on their marriage. According to her testimony, their vacations changed and became nearly nonexistent because her husband's injuries made airplane travel impossible and road travel very difficult. The travel difficulties altered their retirement plans, according to her testimony. They had intended to "travel . . . enjoy life, do things together. We both worked, and it was time to retire and enjoy a little, and it's really difficult." She and her husband no longer take walks together. Moreover, according to her testimony, they would both lose their tempers and argue about household chores, such as cooking. The plaintiff wife testified that her husband's behavior made her "nervous, scared. I worried, very much so."

On April 5, 1999, the plaintiff wife filed a preliminary request to charge concerning count two, the loss of consortium claim. The court refused to charge on that count, and the plaintiff wife took exception to that denial. The record does not indicate the court's reason for denying the request to charge, and the plaintiffs did not file a motion for articulation.

Upon deliberation, the jury received one verdict form to complete. The verdict form was phrased in the singular, referring to only one plaintiff, and did not refer to either count one or to count two.[3] The form reads in relevant part: "What sum of money do you award to justly compensate *plaintiff* for the *plaintiff's* economic damages, if any?[4] . . . What sum of money do you award to justly compensate *plaintiff* for the *plaintiff's* noneconomic damages, if any? . . . Total Damages for the *plaintiff*." (Emphasis added.) The verdict form pre-

---

[3] We note that the caption of the verdict form was in the plural, "Plaintiffs' Verdict."

[4] A plaintiff claiming loss of consortium is not entitled to economic damages, so the reference to economic damages necessarily indicates that the plaintiff to whom the form refers was the husband.

cluded the jury from returning a verdict for the plaintiff wife on the loss of consortium claim.

Although the record does not indicate whether the defendants filed a motion for a directed verdict on count two, the loss of consortium claim, or that the court ordered one on its own motion, we determine that the lack of a charge to the jury on loss of consortium, coupled with the verdict form referring to only one plaintiff, was tantamount to a directed verdict. See *Borkowski* v. *Sacheti*, 43 Conn. App. 294, 312, 682 A.2d 1095 (denial of request to charge amounted to sua sponte directed verdict), cert. denied, 239 Conn. 945, 686 A.2d 120 (1996). Accordingly, we invoke the standard of review applicable to directed verdicts.[5]

"Our standard of review of a directed verdict is well settled. A trial court should direct a verdict for a defendant if, viewing the evidence in the light most favorable

[5] The defendants argue that because the record does not reveal the court's reason for not charging the jury on loss of consortium and because this court should not speculate as to that reason, we should not reach the merits of the claim. The defendants suggest several reasons for which the court may have declined to charge. Those reasons are that (1) the testimony was neither credible nor reliable, (2) the plaintiffs failed to present evidence concerning the marriage relationship prior to the accident to provide a comparative reference, (3) the plaintiffs did not present a prima facie case or (4) the plaintiff wife's requested charge was improper. We disagree that any of those reasons precludes our review. First, we will not presume that the court improperly usurped the function of the jury and determined issues of credibility and reliability. Second, there is no authority in Connecticut that a loss of consortium claim requires the presentation of evidence concerning the marriage relationship prior to the accident for purposes of comparative reference. We, therefore, do not presume that the court refused to charge on that basis. Third, as we discuss in more detail, the plaintiff wife presented a prima facie case of loss of consortium. Fourth, if a court determines that a plaintiff's requested charge should not be given at all, although the requested charge pertains to a count of the plaintiff's complaint, the court should direct a verdict against the plaintiff on that count. See *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 312. The present case does not involve a requested charge that misstated the law and was not therefore improper.

to the plaintiff, a jury could not reasonably and legally reach any other conclusion than that the defendant is entitled to prevail." *Harewood* v. *Carter*, 63 Conn. App. 199, 202, 772 A.2d 764 (2001). We believe the jury reasonably could have reached the conclusion that the plaintiff wife was entitled to prevail.

To avoid a directed verdict on the loss of consortium claim, the plaintiff wife in the present case needed to present evidence from which a reasonable jury could conclude, more probably than not, that (1) her husband sustained injuries, (2) she suffered damages due to those injuries and (3) the defendants were liable for those injuries. See 41 Am. Jur. 2d 166, Husband and Wife § 250 (1995).

"Loss of consortium is defined as the loss of services, financial support, and the variety of intangible relations that exist between spouses living together in marriage. . . . The 'intangible' components of consortium are the 'constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage.' " (Citation omitted.) *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 751, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995). "By such services is meant not so much earned wages as assistance and helpfulness in the relations of conjugal life according to the station of the parties. In addition, there is the exclusive right in each to the society, companionship and conjugal affection of the other. To damages for the loss of these rights may be added recovery for mental anguish and injured feelings." *Keyes* v. *Churchward*, 135 Conn. 115, 118, 61 A.2d 668 (1948). "Damages awarded for loss of consortium include future as well as past suffering, and are measured by the extent of the loss incurred, to the extent that money can measure it. . . . Since loss of consortium is incapable of precise measurement, considerable latitude is allowed a jury

in estimating damages." (Citation omitted.) *Shegog* v. *Zabrecky*, supra, 751.

In the present case, the defendants do not dispute that the plaintiff husband sustained injuries in the automobile accident, and they concede liability as to the loss of consortium claim, recognizing that that claim is derivative in nature and that a jury already has established liability on the underlying negligence claim. The last remaining element, therefore, is damages. As previously discussed, the plaintiffs presented some evidence, although hardly overwhelming, that their marital relationship changed after the accident and that the plaintiff wife suffered harm as a result. We cannot say with conviction that, viewing the evidence in a light most favorable to the plaintiffs, a reasonable jury could not have returned a verdict for the plaintiff wife on her loss of consortium claim. The plaintiff wife was entitled to have her evidence considered by a jury because "[a]s we have noted before, '[a] party has the same right to submit a weak case as he has to submit a strong one . . . .' " *Somma* v. *Gracey*, 15 Conn. App. 371, 375, 544 A.2d 668 (1988). We therefore determine that a retrial is necessary as to count two. See *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 315. The scope of that retrial presents a different issue.

B

The plaintiff wife argues that the retrial should embrace both the husband's negligence count and her loss of consortium count because the two claims are interdependent. The defendants, on the other hand, argue that we should limit the retrial to a hearing in damages on the loss of consortium claim because a jury already has found both liability and damages as to the plaintiff husband's primary claim.[6] We agree with the defendants.

---

[6] If the damages due the plaintiff husband were determined to be inadequate as a matter of law, as argued by him in the trial court and in this court, the retrial of the plaintiff wife's claim would of necessity include the

This court recently addressed a very similar issue in *Harewood* v. *Carter*, supra, 63 Conn. App. 199. In *Harewood*, the plaintiff sustained injuries as a result of a car accident with the defendant. The plaintiff thereafter commenced a negligence action against the defendant in two counts. Count one alleged negligence, and count two alleged statutory violations that, if proved, could have entitled the plaintiff to double or treble damages. The jury returned a verdict for the plaintiff on her negligence claim, but the court directed a verdict for the defendant on count two due to insufficient evidence. On appeal, this court determined that the directed verdict was improper and a retrial was necessary. The scope of the retrial thus became a central issue in that case.

At the outset of our discussion in *Harewood*, we recognized that the cases concerning an order limiting retrial to specific issues typically involve "one cause of action where the issue is whether the liability and damages issues are inextricably woven together so as to require a trial de novo of both issues and do not involve, as the present case does, two separate causes of action arising out of the same incident." Id., 204–205. We concluded that "[t]he jury already found the proper amount to award the plaintiff for her injuries. It remains for a jury to decide only whether there was a statutory violation and, if so, whether it should double or treble the award because of that statutory violation." Id., 207. We therefore limited the retrial to count two and did not require relitigation of the negligence count.

In *Harewood*, we relied on *Murray* v. *Krenz*, 94 Conn. 503, 109 A. 859 (1920), in which our Supreme Court resolved the issue of when it is appropriate for a court

claims of both. See *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, 93, 735 A.2d 347 (1999). For purposes of the discussion in part I B, we assume that the plaintiff husband's judgment remains unaltered.

to order a retrial as to both liability and damages rather than as to damages only. "Where the error as to one issue or issues is separable from the general issues, the new trial may be limited to the error found, provided that such qualification or limitation does not work injustice to the other issues or the case as a whole."[7] Id., 507.

Cases after *Murray* have determined that an inadequate award is typically "so interwoven with liability that justice cannot be done without a new trial on the whole case." *Harewood* v. *Carter*, supra, 63 Conn. App. 205; see also *Fazio* v. *Brown*, 209 Conn. 450, 456–57, 551 A.2d 1227 (1988). Moreover, at least one case after *Murray* has concluded that where the verdict is ambiguous as to what the jury found on the issue of liability, a new trial as to both liability and damages is necessary. See *Malmberg* v. *Lopez*, 208 Conn. 675, 683, 546 A.2d 264 (1988). We must, therefore, decide whether the plaintiff husband's negligence claim is so interwoven with the plaintiff wife's loss of consortium claim that justice requires a remand so that their claims may be tried together. We conclude that justice does not so require.

Loss of consortium is a derivative cause of action, meaning that it is dependent on the legal existence of the predicate action. *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555–56, 562 A.2d 1100 (1989). "Loss of consortium, although a separate cause of action, is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse." *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305,

---

[7] That recognition is consistent with General Statutes § 52-266, which provides: "If several issues are presented by the pleadings and, on the trial of one or more of such issues, an error or ground for a new trial intervenes which does not affect the legality of the trial or disposition of the other issue or issues, judgment shall not be arrested or reversed, nor a new trial granted, except so far as relates to the particular issue or issues in the trial of which such error or ground for a new trial intervened."

312, 524 A.2d 641 (1987). The two claims are "inextricably attached" in that ordinarily they are mirror images of one another. That is to say, if an adverse judgment or a settlement bars the injured spouse's cause of action, any claim for loss of consortium necessarily fails as well. *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494, 408 A.2d 260 (1979). Damages awarded for loss of consortium are subject to the same assessment of comparative responsibility as is the predicate claim. *Champagne* v. *Raybestos-Manhattan, Inc.*, supra, 555.

The attached nature of the two claims is further evidenced by case law suggesting that the derivative spouse may not recover more than the injured spouse.[8] Id. Our Supreme Court recently determined that a noninjured spouse cannot maintain a derivative cause of action for loss of consortium where the injured spouse has not pursued a claim. *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, 95, 735 A.2d 347 (1999). *Jacoby* is an outgrowth of *Hopson* in that it bars the spouse seeking damages for loss of consortium from pursuing an independent action, not only when an action brought by the injured spouse has been settled or adversely concluded, but when the injured spouse has declined to bring an action against the tortfeasor.[9]

---

[8] "Analytically, the derivative action is dependent upon the legal existence of the predicate action, i.e., that action which can be brought on behalf of the injured spouse himself or herself. Conceptually and logically, it follows from that that the derivative action cannot afford greater relief *liability*-wise than would be permitted under the predicate action." (Emphasis added.) *Champagne* v. *Raybestos-Manhattan, Inc.*, supra, 212 Conn. 555–56. That statement, however, is dictum, and our Supreme Court has not yet squarely determined whether, in some cases, the damages of a noninjured spouse may exceed the damages of an injured spouse for the latter's noneconomic damages.

[9] In *Jacoby* v. *Brinckerhoff*, supra, 250 Conn. 86, our Supreme Court did not definitively close the door on the viability of a loss of consortium claim in the absence of a predicate cause of action, suggesting that another factual scenario may have led to another result. In *Jacoby*, the plaintiff husband failed to present evidence that his wife's mental impairment was the reason she did not bring a negligence case in her own behalf.

Connecticut precedent, therefore, conclusively establishes the interdependency of the predicate action and the derivative action. That interdependency arises, however, at the outset of litigation. When our Supreme Court first sanctioned loss of consortium as a cause of action in *Hopson,* it recommended joinder of the two claims.[10] The necessity of combining the two claims stems principally from a concern that a jury will render improper verdicts. "So far as damages are based on intangible losses of society and affection, there is some risk that a jury hearing the husband's claim will consciously or not, include something in the verdict for the wife's loss as well, and vice versa." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 125, p. 933. Joinder also preserves judicial resources in that if the predicate action fails, the derivative action similarly fails. Moreover, joinder in Connecticut is a particularly sound practice where the noninjured spouse's award also is subject to a comparative responsibility assessment.

We are unaware of any Connecticut appellate case or any appellate case from another jurisdiction that analyzes the severability of the loss of consortium claim and the predicate negligence claim in the event of a retrial necessitated solely by the improper treatment of the derivative claim. Some authority exists, however, for our decision in the present case that the two causes of action are indeed severable. In *Creem* v. *Cicero,* 12 Conn. App. 607, 533 A.2d 234 (1987), the named plaintiff sought to recover damages for personal injuries in a motor vehicle accident caused by the defendant's alleged negligence. The plaintiff's wife joined in the action, seeking to recover for loss of consortium. The defendant stipulated to liability and the court submitted

---

[10] Some sister courts have made similar recommendations while others mandate joinder. See *Jacoby* v. *Brinckerhoff,* supra, 250 Conn. 102–103 (*Berdon, J.,* dissenting) (listing positions taken by other jurisdictions). *Jacoby* comes close to mandating joinder.

the matter to a hearing in damages. The jury returned a general verdict for the named plaintiff only four cents greater than the amount he claimed as special damages and returned a general verdict for the plaintiff wife, but awarded no damages. The plaintiffs filed a motion to set aside the verdict, which motion the court granted unless the defendant filed additurs with the court.

On appeal, this court determined that the trial court had improperly set aside the verdict for the named plaintiff, but had not abused its discretion with respect to the verdict for the plaintiff wife on her loss of consortium claim. Consequently, we ordered a reinstatement of the jury verdict as to the negligence claim and affirmed the trial court's order for a new trial or an additur as to the loss of consortium claim. Although *Creem* does not discuss the issue of severability, it provides authority for our decision in the present case.

Other state courts have, without discussion as to the appropriateness of severability after judgments as to both the impaired and deprived spouses' claims,[11] reached similar results as this court did in *Creem*. In *Casey* v. *Pohlman*, 198 Ill. App. 3d 503, 555 N.E.2d 1221 (1990), the impaired spouse challenged the trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict in his favor, and the deprived spouse challenged the failure to award her any damages following a judgment in her favor on her loss of consortium claim. The appellate court affirmed the judgment as to the impaired spouse's negligence claim, but reversed as to the loss of consortium claim. "[T]he evidence adduced at trial supported the award . . . reduced . . . for [the impaired spouse's] contributory negligence. We therefore find it unnecessary to provide

---

[11] We employ the terminology of 3 Restatement (Second), Torts § 693, comment (a) (1977), which labels the physically injured spouse as the "impaired" spouse and the spouse with the loss of consortium claim as the "deprived" spouse.

another jury with the opportunity to reexamine [the impaired spouse's] award. . . . [T]hat portion of the judgment concerning [the deprived spouse's] consortium claim is reversed, and the cause is remanded for a new trial . . . ." Id., 512; see also *Bradshaw v. State Farm Automobile Ins. Co.*, 714 So. 2d 620 (Fla. App. 1998) (affirming finding of comparative negligence and damage award as to impaired spouse, but determining that jury's failure to award any damages for loss of consortium required reversal and remand for new trial on issue of damages as to that claim only); *Albritton v. State Farm Mutual Automobile Ins. Co.*, 382 So. 2d 1267 (Fla. App. 1980) (affirming judgment of impaired spouse's negligence claim, but reversing zero dollar award on deprived spouse's loss of consortium claim and remanding for new trial on issue of damages); *Sims v. Winn Dixie Louisiana, Inc.*, 638 So. 2d 716 (La. App.) (affirming judgment in favor of wife on negligence claim, but remanding husband's loss of consortium claim because certain colloquy during trial may have affected counsel's presentation of defense concerning consortium claim), cert. denied, 644 So. 2d 1062 (La. 1994); *Hodges v. Oberdorfer Motors, Inc.*, 634 S.W.2d 205 (Mo. App. 1982) (affirming jury's finding of defendant's liability to impaired spouse, which also resolved issue of defendant's liability to deprived spouse, thereby leaving the sole unresolved issue of damages); *Davis v. Tripp*, 338 S.C. 226, 525 S.E.2d 528 (S.C. App. 1999) (affirming judgments for impaired spouses, but determining that court improperly refused to submit loss of consortium claims to jury and remanding for trial as to those claims).

The Restatement (Second) of Torts and cases from other jurisdictions that discuss joinder provide further guidance for us in the present case. In 3 Restatement (Second), Torts § 693, comment (g), p. 498 (1977), there is discussion, as there is in *Hopson* and *Jacoby*, that

the absence of joinder is sometimes excusable. Although the facts of this case do not present a situation given in the Restatement as an example of a justifiable failure to join the two actions,[12] the comment in the Restatement concludes by stating: "There are no doubt other possible situations." Id.

Freestanding claims for loss of consortium are not categorically impermissible. If, for example, both claims were originally brought in one action, but the primary claim was dismissed for lack of standing to bring an action, the claim for loss of consortium remains viable. *Kubian* v. *Alexian Bros. Medical Center*, 272 Ill. App. 3d 246, 651 N.E.2d 231, cert. denied, 163 Ill. 2d 560, 657 N.E.2d 623 (1995). Where mandatory joinder is impossible because the impaired spouse settled the primary claim and the tortfeasor had full knowledge that an independent action for loss of consortium was pending, the deprived spouse may still pursue the latter action. See *Letasky* v. *United States*, 783 F. Sup. 451 (D. Alaska 1992); see also *Buckley* v. *National Freight, Inc.*, 90 N.Y.2d 210, 681 N.E.2d 1287, 659 N.Y.S.2d 841 (1997) (discussing possible situations of excusable failure to join two claims).

The reasons for joining the two claims, derivative and primary, do not necessarily support a retrial on all issues after a jury has determined liability and damages on the predicate claim, and an appellate court has upheld the liability and award of damages. Once the predicate judgment has been upheld, it is legally impos-

---

[12] Comment (g) of § 693 of 3 Restatement (Second), Torts, provides in relevant part: "There will be situations in which it is not possible to join the causes of action for the single trial. Thus the impaired spouse's cause of action may have been abated by death. Or the action of the impaired spouse may be barred by a [workers'] compensation act, which does not bar the deprived spouse's action. Or the impaired spouse may have settled and released the claim for bodily harm without the knowledge of the deprived spouse. Or the impaired spouse may simply refuse to sue." Id., p. 498.

sible for joinder of the actions to continue on retrial unless both causes of action are retried. In the present case, either the plaintiff wife must try her cause of action alone so that the involuntary deprivation of her cause of action does not penalize her or issues already tried, decided and upheld as to the plaintiff husband's cause of action must be needlessly relitigated.

A new trial in the present case solely on the issue of damages as to the loss of consortium claim does not implicate any of the concerns for which courts have determined that the underlying impaired spouse's claim must accompany the deprived spouse's claim. The defendants presented no evidence of comparative responsibility. The plaintiff husband neither lost in his action nor settled his claim, so neither settlement nor adverse judgment bars the plaintiff wife's claim. Furthermore, no reason exists for concern that the jury will improperly award damages to the plaintiff wife for the husband's injuries or vice versa.

The parties already have litigated the plaintiff husband's claim without any argument to the trial court or to this court that the jury charge was incorrect as to his claim. Had the court given a charge on the plaintiff wife's loss of consortium claim, the defendants' liability or the amount of the plaintiff husband's award would in all likelihood have remained the same. The absence of a charge on the loss of consortium claim affects only the loss of the plaintiff wife, not the damages of the plaintiff husband. We conclude that a retrial limited to the entitlement to the amount of damages arising from count two will not work an injustice to the parties in this case. Upon remand for a hearing in damages as to the plaintiff wife's claim, the trial court must, by appropriate instructions, exclude those economic damages attributable to the plaintiff husband's claims. See Brown v. Metzger, 104 Ill. 2d 30, 39, 470 N.E.2d 302 (1984); 41 Am. Jur. 2d 174–76, supra, § 263.

## II

The plaintiffs also claim that the court improperly admitted into evidence an exhibit pursuant to the learned treatise exception to the hearsay rule. This claim relates to the plaintiff husband's appeal from the denial of his motion to set aside the verdict for him as to damages only. Basic to determining whether the denial was improper is whether a jury fairly could reach the verdict it did, given the evidence heard. *Vetre* v. *Keene*, 181 Conn. 136, 138, 434 A.2d 327 (1980). Unless the verdict does a manifest injustice or is palpably against the evidence so as to shock the court's conscience, it should stand. *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 750, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997).

In this case, the plaintiffs impliedly argue that if the court had not admitted the treatise, the jury would have awarded materially greater damages, both economic and noneconomic. We do not speculate as to whether that claim is true because we conclude that the court did not abuse its discretion in admitting the exhibit.

The following additional facts are necessary to place this claim in proper context. At trial, the plaintiff husband testified that he suffered injuries to his spine and to his TMJ as a result of the automobile accident. The plaintiffs also offered the testimony of the husband's treating physician, I. L. Cantner. Cantner testified that the whiplash to the plaintiff husband's neck during the accident caused his TMJ injury. On cross-examination, counsel for the defendants attempted to impeach Cantner's conclusion concerning the source of the TMJ injury. Counsel offered an article entitled, "Whiplash and Temporomandibular Disorders: A Critical Review," which was published in the December, 1998 edition of the Journal of the American Dental Association. Cantner testified that he was a member of the American Dental

Association, that he was familiar with the journal, and that it was widely read, recognized and accepted in the dental profession as authoritative. At that point, counsel for the defendants sought to introduce only the article as a learned treatise, not the entire journal. Counsel for the plaintiffs objected to the admission of the article as hearsay. The court overruled the objection and admitted the article pursuant to the learned treatise exception to the hearsay rule.

Our standard of review of evidentiary rulings is well settled. Evidentiary rulings "will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Pacific Land Exchange* v. *Hunts*, 52 Conn. App. 362, 364, 727 A.2d 1281 (1999).

Connecticut permits the introduction of professional and scientific treatises and journals on cross-examination of an expert witness to impeach the expert's testimony if the expert has either relied on the work in direct examination or acknowledged the work as accepted by the profession. Conn. Code Evid. § 8-3 (8).[13] "The rule in this jurisdiction regarding the use of learned treatises is that if a 'treatise is recognized as authoritative by an expert witness and if it influenced or tended to confirm his opinion, then relevant portions thereof may be

---

[13] Connecticut Code of Evidence § 8-3 (8) provides: "To the extent called to the attention of an expert witness on cross-examination or relied on by the expert witness in direct examination, a statement contained in a published treatise, periodical or pamphlet on a subject of history, medicine, or other science or art, recognized as a standard authority in the field by the witness, other expert witness or judicial notice."

admitted into evidence in the exercise of the trial court's discretion.' " *Ames* v. *Sears, Roebuck & Co.*, 8 Conn. App. 642, 651, 514 A.2d 352, cert. denied, 201 Conn. 809, 515 A.2d 378 (1986). Cantner did not rely on the article during direct examination, so the question becomes whether Cantner acknowledged the article when he testified that the journal itself, in which the article was published, was accepted by the dental profession.

The plaintiffs argue that Cantner's acceptance of the journal that contained the article was insufficient to qualify the article contained therein as a learned treatise. The plaintiffs cite several federal cases as support for that argument. "We add that in any event we would not accept plaintiff's argument that the contents of all issues of a periodical may be qualified wholesale under [Federal Rule of Evidence] 803 (18) by testimony that the magazine was highly regarded. In these days of quantified research, and pressure to publish, an article does not reach the dignity of a 'reliable authority' merely because some editor, even a most reputable one, sees fit to circulate it. Physicians engaged in research may write dozens of papers during a lifetime. Mere publication cannot make them automatically reliable authority." *Meschino* v. *North American Drager, Inc.*, 841 F.2d 429, 434 (1st Cir. 1988); see also *Twin City Fire Ins. Co.* v. *Country Mutual Ins. Co.*, 23 F.3d 1175, 1184 (7th Cir. 1994).

We do not disagree with the *Meschino* court. We, too, would not accept that *all* articles in a periodical may be qualified as learned through the mere demonstration that the periodical itself is highly regarded. A recent federal case aptly explains that limitation. "We do not, however, read *Meschino* to say that the reputation of the periodical containing the proffered article is irrelevant to the authoritativeness inquiry. Publication practices vary widely, and an article's publication by an esteemed periodical which subjects its contents to

close scrutiny and peer review, obviously reflects well on the authority of the article itself. Indeed, because the authoritativeness inquiry is governed by a 'liberal' standard, good sense would seem to compel recognizing some periodicals—provided there is a basis for doing so—as sufficiently esteemed to justify a presumption in favor of admitting the articles accepted for publication therein." *Costantino* v. *Herzog*, 203 F.3d 164, 172 (2d Cir. 2000). It was not an abuse of the trial court's discretion to determine that because Cantner viewed the journal as authoritative, it made "good sense" to "justify a presumption in favor of admitting the [article] accepted for publication therein." Id.

## III

The plaintiffs also argue that the court improperly granted the defendants' motion in limine, thereby precluding the plaintiffs from cross-examining the defendants' expert as to a malpractice action against that expert. It is problematic as to whether that ruling had a significant effect on the amount of damages to which the plaintiff husband was entitled. We review the issue to make certain that the court did not abuse its discretion, thereby affecting the fair and just damages to which the plaintiff husband was entitled.

The following additional facts pertain to this issue. The defendants filed a disclosure of an expert witness, Paul A. Bocciarelli, an expert in the area of TMJ dysfunction, who intended to testify as to the plaintiff husband's TMJ injuries. During Bocciarelli's discovery deposition, he testified that he had a malpractice claim filed against him about ten years ago. That malpractice claim involved a patient with an underlying bone marrow disorder who sought treatment from Bocciarelli. After treatment, the patient began to bleed and required hospitalization. The patient brought an action against Bocciarelli for malpractice, and a jury found in favor of the

patient in that case. Bocciarelli appealed and, during the pendency of the appeal, the parties settled.

On March 23, 1999, the defendants filed a motion in limine to preclude questioning at trial about the malpractice claim against Bocciarelli. The plaintiffs opposed the motion and argued that the line of inquiry regarding the malpractice claim went to the expert's general qualifications as a dentist, that is, "whether he is someone who is fit to give an opinion based upon the fact that he has made mistakes in the past." At the March 31, 1999 hearing on the motion, the court granted the defendants' motion on the grounds that the line of questioning was prejudicial, irrelevant and that a settlement during the appeal did not give rise to any judicially determined liability. We agree with the court's decision to preclude the questioning.

As we discussed in part II, we review evidentiary rulings for an abuse of discretion. *Pacific Land Exchange* v. *Hunts*, supra, 52 Conn. App. 364. The plaintiffs argue that because the opinions of the experts were contradictory and the jury needed to decide which expert to believe, the issues of competency and qualification became critical. As such, according to the plaintiffs, evidence tending "to contradict or diminish the qualifications of a doctor, such as evidence of a prior finding of malpractice, is clearly relevant, and that relevance far outweighs any prejudice." We disagree on the facts of this case.

It was not an abuse of the court's discretion to conclude that a malpractice claim made against Bocciarelli ten years ago concerning a bleeding complication is not relevant to the credibility of his opinion concerning the cause of the plaintiff husband's TMJ injuries. We previously have allowed cross-examination of an expert relating to a malpractice action where that line of inquiry went to motive and bias; see *Hayes* v. *Manches-*

*ter Memorial Hospital,* 38 Conn. App. 471, 474–75, 661 A.2d 123, cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995); but we know of no authority that any expert who testifies as to his or her qualifications opens the door to an unfettered cross-examination of any malpractice claims made against that expert, however old, that are wholly unrelated to the proposed testimony and serve no purpose but to show that the expert "has made mistakes in the past."

Moreover, even if we were to conclude that the court improperly restricted the scope of the plaintiffs' cross-examination, the plaintiffs must also demonstrate that the ruling was harmful. Id., 475. A harmful evidentiary ruling is one that likely affected the result of the trial. Id. Here, the claim as to harm is that the jury awarded inadequate damages. The plaintiffs have failed to substantiate that claim. The plaintiffs argue that if the jury had heard testimony regarding the malpractice claim, it might well have decided to discredit Bocciarelli's opinion. The jury then would have been left with the conflicting opinion of the plaintiffs' expert, which in turn, would somehow have increased the plaintiff husband's damages. That type of speculation is insufficient to establish harm. It is impossible to determine whether the jury did not award greater damages for pain and suffering because it disbelieved the plaintiff husband's testimony or because it credited the testimony of one expert over another.

The judgment for the defendants on count two as to the plaintiff wife is reversed and the case is remanded for a hearing in damages as to that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.